**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TROY COULSTON**<br><br>**v.**<br><br>**CITY OF PHILADELPHIA, et al.** | **CIVIL ACTION**<br><br>**NO.  23-4077** |

**MEMORANDUM RE: MOTION TO DISMISS**

Baylson, J.                                                    September 23, 2024

Plaintiff Troy Coulston brings this § 1983 suit against the City of Philadelphia (the "City")

and several individuals in connection with his 1992 conviction for first-degree murder and other

related charges which were dismissed by the Philadelphia Court of Common Pleas in 2021.

Plaintiff asserts one count against the City of Philadelphia for municipal liability (Count IV) and

four counts against the individual Defendants for fabrication of evidence in violation of the

Fourteenth Amendment (Count I), malicious prosecution in violation of the Fourth and/or

Fourteenth Amendments (Count II), deliberate suppression of exculpatory evidence in violation of

the Fourteenth Amendment (Count III), and a supplemental claim for malicious prosecution in

violation of the laws of the Commonwealth of Pennsylvania (Count V).

The City and several of the individual Defendants move to dismiss the Second Amended

Complaint ("SAC") for failure to state a claim.[1]  This memorandum addresses only the motion of

---

[1] The Second Amended Complaint asserts claims against the City of Philadelphia, Karen Ansel (as personal representative of the estate of Francis Ansel), Charles Bentham, John Della Rocca (as personal representative of the estate of John Cimino), Richard Harris, John Della Rocca (as personal representative of the estate of Joseph Hasara), Richard Lynn, David Desiderio, Frank Jastrzembski, Raymond Dougherty, Lieutenant Holley, Sergeant Royds, and John Doe(s).  Defendant Desiderio, the City of Philadelphia, and officers Bentham, Harris, and Royds each filed Motions to Dismiss the Second Amended Complaint.  ECF Nos. 73, 89–90.  Defendant Ansel (as personal representative of the estate of Francis Ansel) answered the Second Amended Complaint on August 5, 2024.  ECF 80.  On May 13, 2024, the Court granted a partial stay as to Defendant Jastrzembski.  ECF 58.  On July 11, 2024, Defendant Jastrzembski provided a status report requesting an extension of the partial stay.  ECF 61.  Defendants John Della

one of the individual Defendants, former Assistant District Attorney David Desiderio's ("Defendant Desiderio") Motion to Dismiss. As relevant here, Defendant Desiderio moves to dismiss all counts asserted against him in the Second Amended Complaint—namely, counts I, II, III, and V—on the grounds that Defendant Desiderio is entitled to absolute immunity. ECF 73. For the reasons stated below, Defendant Desiderio's Motion to Dismiss is **GRANTED IN PART**. Defendant Desiderio's Motion to Dismiss is **GRANTED with prejudice** as to the supplemental claim for malicious prosecution in violation of the laws of the Commonwealth of Pennsylvania (Count V) and is **DENIED** as to the claims for fabrication of evidence in violation of the Fourteenth Amendment (Count I), malicious prosecution in violation of the Fourth and/or Fourteenth Amendments (Count II), and deliberate suppression of exculpatory evidence in violation of the Fourteenth Amendment (Count III).

## I.   RELEVANT FACTUAL BACKGROUND[2]

### A.  Michael Haynesworth is Murdered

On November 21, 1989, Michael Haynesworth's body was discovered in the back seat of a car parked in a secluded grassy area of Fairmount Park in Philadelphia. SAC (ECF 59) at ¶¶ 2, 28–29. As alleged in the Second Amended Complaint, Detective Hasara was assigned responsibility to investigate Haynesworth's murder with the help of Detectives Ansel, Bentham, Cimino, Dougherty, Harris, Jastrzembski, and Lynn (collectively, the "Defendant Detectives"). Id. ¶ 30. Shortly after discovering Haynesworth's body, Defendant Detectives brought in 13-year-old Rashida Salaam to the Homicide Division headquarters for interrogation. Id. ¶¶ 36–37.

---

Rocca (as personal representative of the estates of both John Cimino and Joseph Hasara), Lynn, Dougherty, and Holley have not yet filed a responsive pleading or entered any appearance in the case. No affidavit of service has been filed as to the Second Amended Complaint for these defendants.

[2] The Court here recites the facts as alleged by Plaintiff in the Second Amended Complaint that are relevant to Defendant Desiderio's Motion to Dismiss.

Salaam was "known to have a difficult family life" and was groomed into several sexual relationships with adult men. Id. ¶ 35. Salaam was placed in an interrogation room alone and was interviewed by Detectives Bentham and Lynn for more than six hours without a parent present, other than briefly in the middle of the interview when they brought in Salaam's mother to observe when they provided Salaam with Miranda warnings. Id. ¶ 37.

Over the course of the six-hour interrogation, Salaam allegedly provided the detectives with varying accounts of the circumstances leading to Haynesworth's death. Id. ¶ 38. Initially, Salaam told the detectives that Plaintiff was solely responsible for murdering Haynesworth. Id. ¶ 39. Salaam then claimed that an individual named Christopher Williams was also involved. Id. ¶ 40. After multiple hours of questioning, Salaam identified James White as a third participant in the murder. Id. ¶ 41. By the end of the interview, Salaam allegedly told the detectives that she lured Haynesworth to her apartment and once outside her apartment, White, Williams, and Plaintiff accosted Haynesworth, threw Haynesworth into his own car, and drove away. Id. ¶ 43. After the interrogation, Salaam was arrested and charged as an adult with first-degree murder. Id. ¶ 47.

Within hours of completing Salaam's interview, Detective Hasara then interviewed another witness named Eva Williams, Haynesworth's cousin. Williams allegedly told detectives that James White was the sole perpetrator of the offense, that White had a motive to harm Haynesworth, and that White had confessed to the murder after it occurred. Id. ¶ 48–54. Detective Jastrzembski also interviewed Williams' brother, Richard Johnson, who allegedly told the detectives that White had a practice of using Salaam to summon drug dealers to a location where White would rob them. Id. ¶¶ 56–58. Based on Salaam's and Williams' statements, Defendant Detectives sought an arrest warrant for James White, and he was taken into custody. Id. ¶ 59.

**B.  James White's Statement**

Shortly after White's arrest, White admitted to Detective Dougherty that he was involved in the Haynesworth murder.  Id. ¶ 60.  However, the Second Amended Complaint alleges that White's statement to Detective Dougherty was substantially different than Salaam's account of the murder.  Id. ¶¶ 60–61.  White allegedly said that Salaam lured Haynesworth into the apartment, that White, Christopher Williams, and Plaintiff then beat Haynesworth for hours, and then they tied Haynesworth up and put him in the back seat of his car.  Id. ¶ 61.

Defendant Desiderio took on the prosecution of White's case.  Id. ¶ 63.  Defendant Desiderio allegedly sought to use White to provide information about multiple unsolved homicide cases and secure arrests for those cases.  Id. ¶ 64.  The Second Amended Complaint alleges that Defendant Desiderio was "intimately involved in multiple interviews" with White prior to Plaintiff's arrest and that in these interviews, Defendant Desiderio "willfully fed information to White so that White would sign off on written statements that could then be used in support of prosecutions against other actors," or alternatively, "knew or recklessly disregarded that the information White provided about multiple murders was false and fabricated."  Id. ¶¶ 65, 67–68.  The Second Amended Complaint further alleges that Defendant Desiderio knew that "White's various accounts of the Haynesworth murder shifted dramatically over time and, in many instances, were irreconcilable with the physical evidence found by police."  Id. ¶ 69.  In these interviews, White implicated Plaintiff in the Haynesworth murder as well as an additional murder of Marron Genrette.  Id. ¶¶ 71–75.

Plaintiff, however, still had not yet been charged.  Id. ¶ 76.

### C.  Salaam's Second Statement

As of December 1989, Defendant Desiderio and Defendant Detectives had statements from White and Salaam implicating Plaintiff in the Haynesworth murder that contained "substantial inconsistencies." Id. ¶ 76.  During Salaam's various pretrial proceedings following her arrest, Defendant Desiderio allegedly pressured Salaam into changing her statement to align more closely with White's statement.  Defendant Desiderio allegedly emphasized the severity of the charges against Salaam to coerce her to provide a second statement reconciling inconsistencies. Id. ¶¶ 77–81.  Salaam allegedly then agreed to provide Defendants "with the information they wanted to hear." Id. ¶ 82.

On February 26, 1991, Salaam's case was transferred to juvenile court proceedings ensuring that she would not be confined past the age of 21. Id. ¶ 83.  On that same day, Detective Harris, "in collaboration with Desiderio and the other defendant detectives," allegedly fed Salaam information to resolve inconsistencies between her statement and White's statement. Id. ¶¶ 83–84.  Plaintiff alleges Desiderio was aware that Defendant Harris fed Salaam the information. Id. ¶ 86.

### D.  Plaintiff's Arrest

Defendant Desiderio and Defendant Detectives prepared an affidavit of probable cause for Plaintiff's arrest based on White's and Salaam's statements implicating Plaintiff in the Haynesworth murder. Id. ¶¶ 87.  Plaintiff was only thereafter formally arraigned on murder charges. Id. ¶ 89.

Following Plaintiff's arrest, White participated in numerous additional interviews with Defendant Detectives and Defendant Desiderio. Id. ¶ 90.  White allegedly provided a detailed account of the Haynesworth murder, as well as other murders, that was inconsistent with the

physical evidence.  Id. ¶¶ 91–101.  Defendants allegedly disregarded the major inconsistencies undermining White's credibility.  Id. ¶ 102.

Plaintiff was tried for the Haynesworth murder in January 1992.  Id. ¶ 103.  At trial, Defendant Desiderio on behalf of the Commonwealth presented the alleged "plainly false" testimony of Salaam and White.  Id. ¶ 105.  Defendant Desiderio also presented the testimony of David Lee to allegedly corroborate Salaam's and White's testimony.  Id. ¶¶ 106–107.  The jury convicted Plaintiff of first-degree murder and related charges on January 22, 1992, and Plaintiff was sentenced to life imprisonment without parole.  Id. ¶ 108.

### E.  Plaintiff's Conviction is Vacated

The Second Amended Complaint alleges that in 2016, the Philadelphia District Attorney's Office's Conviction Integrity Unit (CIU) conducted a comprehensive review of all murder investigations relying on information from James White and concluded that White had provided false information in multiple prosecutions and that his testimony lacked credibility.  Id. ¶¶ 111–13.  Plaintiff alleges post-conviction counsel discovered on review of the case files that several "critical pieces of information" were never provided to Plaintiff, including two documents allegedly contradicting White's prior statements and a police activity sheet further undermining White's credibility.  Id. ¶¶ 119, 122–127.  Plaintiff further alleges the prosecution withheld information undermining the credibility of their witness, David Lee.  Id. ¶¶ 128–131.

The Second Amended Complaint alleges that Plaintiff filed a petition under the Post-Conviction Relief Act in the Philadelphia Court of Common Pleas and that the CIU filed a response which included a set of stipulated facts confirming the lack of credibility of the prosecution's case against Plaintiff and the withholding of exculpatory information.  Id. ¶¶ 132-33.  The CIU conceded Plaintiff was entitled to post-conviction relief.  Id. ¶ 133.

On November 30, 2021, the Philadelphia Court of Common Pleas entered an order vacating Plaintiff's conviction and sentence.  Id. ¶ 134.  The CIU moved to nolle pros the charges, and the court granted the CIU's motion.  Id.

## II.   PROCEDURAL HISTORY

Plaintiff filed an initial Complaint on October 21, 2023.  ECF 1.  On December 22, 2023, Plaintiff filed an Amended Complaint (ECF 23), bringing the following five claims under 42 U.S.C. § 1983:

- **Count I**:  Fabrication of evidence in violation of the Fourteenth Amendment, against all individual Defendants;

- **Count II**:  Malicious prosecution in violation of the Fourth and/or Fourteenth Amendments, against all individual Defendants;

- **Count III**:  Deliberate suppression of exculpatory evidence in violation of the Fourteenth Amendment, against all individual Defendants;

- **Count IV**:  Municipal liability, against the City of Philadelphia;

- **Count V**:  A supplemental claim for malicious prosecution under the laws of the Commonwealth of Pennsylvania, against all individual Defendants.

On December 29, 2023, Defendant Desiderio filed a Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim.  ECF 25.  Plaintiff responded on January 22, 2024 (ECF 31) and Defendant Desiderio filed a reply on January 29, 2024.  ECF 32.

The Court held oral argument on Defendant Desiderio's Motion to Dismiss on February 8, 2024.  ECF 38.  Following oral argument, the Court entered an Order dismissing Count V of the Amended Complaint with prejudice and dismissed all other counts without prejudice with leave to amend.  ECF 39.  The Court further ordered that Plaintiff promptly serve a subpoena on the Office

of the District Attorney for the City of Philadelphia without waiting for a conference of all parties pursuant to Rule 26(f).  Id.

On June 24, 2024, Plaintiff filed a Second Amended Complaint (ECF 59), bringing five claims:

- **Count I**:  Fabrication of evidence in violation of the Fourteenth Amendment, against all individual Defendants;

- **Count II**:  Malicious prosecution in violation of the Fourth and/or Fourteenth Amendments, against all individual Defendants;

- **Count III**:  Deliberate suppression of exculpatory evidence under the Fourteenth Amendment, against all individual Defendants;

- **Count IV**:  Municipal liability, against the City of Philadelphia;

- **Count V**:  A supplemental claim for malicious prosecution under the laws of the Commonwealth of Pennsylvania, against all individual Defendants.

On July 18, 2024, Defendant Desiderio filed a Motion to Dismiss the Second Amended Complaint for Failure to State a Claim.  ECF 73.  Plaintiff responded on August 8, 2024 (ECF 81), and Defendant Desiderio filed a reply on August 14, 2024.  ECF 88.  Defendant Desiderio's Motion to Dismiss is presently before the Court.[3]

## III.  PARTIES' CONTENTIONS

Defendant Desiderio asserts that he is entitled to absolute immunity from all claims in the Second Amended Complaint because each of the claims involve actions taken by Defendant Desiderio acting as an advocate for the Commonwealth for which a prosecutor is absolutely

---

[3] The City and Defendants Bentham, Harris, and Royds also moved to dismiss the Second Amended Complaint.  ECF Nos. 89–90.  Those motions are not addressed in this memorandum.

immune, including preparing for, initiating, and prosecuting criminal charges.  ECF 73-2 at 14.  Defendant Desiderio makes three points in support of his assertion.  First, the Second Amended Complaint alleges Defendant Desiderio presented the false testimony of White and Salaam at trial and withheld exculpatory information undermining the credibility of the witness David Lee, but Defendant Desiderio's conduct at trial is "clearly entitled to absolute immunity."  ECF 73-2 at 14.  Second, Defendant Desiderio's conduct in obtaining allegedly false statements from White and Salaam are entitled to absolute immunity because both occurred while negotiating plea deals and both involve the solicitation of perjured testimony which is a quintessential advocacy act protected by absolute immunity.  Id. at 15–16.  Third, Defendant Desiderio's conduct in preparing an affidavit of probable cause for Plaintiff's arrest is a "decision to initiate a prosecution" that "is at the core of a prosecutor's judicial role" and entitled to absolute immunity.  Weimer v. Cnty. of Fayette, 972 F.3d 177, 189 (3d Cir. 2020) (internal quotation marks and citation omitted); ECF 73-2 at 16–17.

Plaintiff counters that the Third Circuit's decisions in Roberts v. Lau, 90 F.4th 618 (3d Cir. 2024) and Fogle v. Sokol, 957 F.3d 148 (3d Cir. 2020) are controlling and establish that Defendant Desiderio's conduct as alleged in the Second Amended Complaint was investigatory and not entitled to absolute immunity.  See ECF 81-2.

In reply, Defendant Desiderio argues that the claims for fabrication of evidence, malicious prosecution, and deliberate suppression of exculpatory evidence rely on prosecutorial conduct for which Defendant Desiderio is entitled to absolute immunity.  ECF 88 at 2–5.  Defendant Desiderio also argues that Roberts and Fogle are distinguishable, and that this case is akin to Wilson v. City of Philadelphia, No. 21-2057, 2023 WL 5186258 (E.D. Pa. Aug. 11, 2023) in which Judge Younge held former ADA Desiderio was entitled to absolute immunity.  ECF 88 at 5–12.

**IV.   LEGAL STANDARD**

Prosecutors are entitled to absolute immunity for all actions they perform while serving in a "quasi-judicial" role.  Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992).  To discern when a prosecutor is acting in such a role, courts look to the "nature of the function performed, not the identity of the actor who performed it[.]"  Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001).  Thus, if a prosecutor's acts are "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976), absolute immunity precludes liability under § 1983.  That immunity falls away, however, for "administrative or investigatory action[ ] unrelated to initiating and conducting judicial proceedings."  Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008).

The "investigatory action" inquiry is a holistic one, but by and large, "prosecutors are most likely functioning in a 'quasi-judicial' capacity…between indictment and dismissal, acquittal, or conviction."  Id. at 211.  As such, absolute immunity routinely extends to a prosecutor's decision to "withhold[ ] exculpatory evidence" during discovery and at trial.  Douris v. Schweiker, 229 F. Supp. 2d 391, 399 (E.D. Pa. 2002) (Baylson, J.); see also Savage v. Bonavitacola, No. CIV.A.03-0016, 2005 WL 568045, at *12 (E.D. Pa. Mar. 9, 2005); Roberts v. Toal, No. 94-0608, 1995 WL 51678, *2 (E.D. Pa. Feb. 8, 1995).

**V.   ANALYSIS**

Courts apply a two-step framework to analyze whether a prosecutor is entitled to absolute immunity.  Roberts, 90 F.4th at 625 (citing Fogle, 957 F.3d at 161).  First, the Court ascertains the conduct forming the basis for the plaintiff's cause of action.  Id.  The Court then determines whether the conduct served a prosecutorial, administrative, investigative, or other function.  Id.  The Third Circuit has emphasized that "[d]etermining the precise function that a prosecutor is

performing is a fact-specific analysis." <u>Fogle</u>, 957 F.3d at 160. This Court will therefore independently analyze the conduct alleged in the Second Amended Complaint.[4]

### A. Counts I-III

#### 1. James White's Statements to Defendant Desiderio

The Second Amended Complaint alleges that Defendant Desiderio first became involved in the Haynesworth murder investigation when he took on the prosecution of White's case "[s]hortly after White's arrest," but, critically, before Plaintiff was arrested. SAC ¶¶ 63, 74, 76. Defendant Desiderio became "intimately involved in multiple interviews with James White." <u>Id.</u> ¶ 65. During those interviews, White implicated himself in at least six different murders. <u>Id.</u> Plaintiff alleges that by December 1989, Defendant Desiderio and the Defendant Detectives had obtained White's statement implicating Plaintiff in the Haynesworth murder. <u>Id.</u> ¶ 75. However, Plaintiff alleges Defendants did not charge Plaintiff at this point because White's statement contained substantial inconsistencies with Salaam's prior accounts of the Haynesworth murder. <u>Id.</u> ¶ 76.

The crux of the alleged constitutional violations as pled in the Second Amended Complaint is that during these interviews with White, Defendant Desiderio "willfully fed information to White so that White would sign off on written statements that could then be used in support of prosecutions against other actors," <u>id.</u> ¶ 67, or alternatively "Desiderio knew or recklessly disregarded that the information White provided about multiple murders was false and fabricated" because White was incentivized to provide false information. <u>Id.</u> ¶ 68. Plaintiff further alleges that Defendant Desiderio "knew that White's various accounts of the Hay[ne]sworth murder

---

[4] Defendant Desiderio does not argue for qualified immunity should the Court find that his conduct was investigative and absolute immunity does not apply.

shifted dramatically over time and, in many instances, were irreconcilable with the physical evidence found by police." Id. ¶ 69.

The Court finds that at this stage, the Second Amended Complaint plausibly alleges that Defendant Desiderio was acting in an investigatory role when he participated in interviews with White prior to Plaintiff's arrest. See Roberts, 90 F.4th at 625 ("To earn the protections of absolute immunity at the motion-to-dismiss stage, a [prosecutor] must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." (quoting Weimer, 972 F.3d at 187)); Fogle, 957 F.3d at 162 n.14 (providing that "immunity defenses will often require the benefit of discovery"). The Court is guided by the Third Circuit's decision in Weimer v. County of Fayette, 972 F.3d 177 (3d Cir. 2020), where the Third Circuit declined to extend absolute immunity to a prosecutor who was involved in a witness interview prior to the plaintiff's arrest. Id. at 189. In Weimer, the complaint alleged that the prosecutor "manipulated evidence and knowingly continued to investigate contradictory witness statements in the period leading up to [the plaintiff's] arrest." Id. The prosecutor allegedly relied on contradictory witness statements which identified different participants in the murder to initiate a prosecution against the plaintiff. Id. at 181, 189. The Third Circuit held that "investigating leads before criminal charges have been filed [ ] is more akin to 'the detective's role in searching for the clues and corroboration that might give h[er] probable cause to recommend that a suspect be arrested' than 'the advocate's role in evaluating evidence and interviewing witnesses as [s]he prepares for trial.'" Id. at 189 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

Importantly, like in Weimer, Plaintiff alleges that Defendant Desiderio's interviews with White occurred prior to Plaintiff's arrest and that Defendant Desiderio relied, in part, on White's contradictory statement to initiate the prosecution. And while there are no bright-line rules that

treat the timing of the prosecutor's alleged conduct as dispositive, the Supreme Court has instructed that before having probable cause for an arrest, a prosecutor's "mission at that time [i]s entirely investigative in character." <u>Buckley</u>, 509 U.S. at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.").

Defendant Desiderio asserts that he is absolutely immune for his conduct in obtaining White's statement because "courts have held that the solicitation of perjured testimony is a quintessential advocatory act protected by absolute immunity." ECF 73-2 at 15. The Court rejects Defendant Desiderio's characterization of his conduct as soliciting perjured testimony. Defendant Desiderio's reliance here on <u>Rose v. Bartle</u> and <u>Yarris v. County of Delaware</u> is misplaced. <u>Id.</u> In <u>Rose</u>, the Third Circuit extended absolute immunity where the "plaintiff's allegations involve[d] direct solicitations of testimony for use in the grand jury proceedings." <u>Rose v. Bartle</u>, 871 F.2d 331, 344 (3d Cir. 1989). On the face of the Second Amended Complaint, there are no allegations that Defendant Desiderio solicited White's statement to use in grand jury proceedings against Plaintiff. <u>See</u> <u>Roberts</u>, 90 F.4th at 625 ("To earn the protections of absolute immunity at the motion-to-dismiss stage, a [prosecutor] must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." (quoting <u>Weimer</u>, 972 F.3d at 187)). Rather, the Second Amended Complaint alleges that White's statements were solicited as part of the investigation into Haynesworth's murder. In <u>Yarris</u>, the Third Circuit extended absolute immunity to the defendant prosecutors who obtained false statements from a jailhouse informant "*after* Yarris's prosecution for those crimes had begun." <u>Yarris v. Cnty. of Delaware</u>, 465 F.3d 129, 139 (3d Cir. 2006) (emphasis in original). Here, as alleged in the Second Amended Complaint, Plaintiff had not yet been arrested at the time Defendant Desiderio obtained false statements from White.

Defendant Desiderio also argues that he "became involved with the alleged fabricated statements implicating Plaintiff while he was working out plea deals with White" and is thus entitled to absolute immunity on that basis.  ECF 73-2 at 16.  While Defendant Desiderio may have been involved in plea negotiations with White, the Second Amended Complaint alleges that Plaintiff had not yet been arrested.  Defendant Desiderio was investigating leads to build a potential case against Plaintiff for the Haynesworth murder at the time of White's statement.  Fogle, 957 F.3d at 164; SAC ¶¶ 59–74.

Defendant Desiderio relies in part on Judge Younge's opinion in Wilson v. City of Philadelphia, No. 21-2057, 2023 WL 5186258 (E.D. Pa. Aug. 11, 2023), in which Judge Younge held that the plaintiff could not assert rights on behalf of a witness who may have been coerced to implicate the plaintiff in a crime.  ECF 88 at 10–12.  However, Plaintiff here is not seeking to assert White's constitutional right to be free from coercion, but rather is asserting that his own constitutional rights were violated because White's statement, allegedly riddled with inconsistencies, was used as part of the basis for his own prosecution.  Defendant Desiderio's argument also runs counter to Third Circuit cases declining to extend absolute immunity where the prosecutor knowingly obtained fabricated statements from incarcerated witnesses during plea negotiations in order to implicate a third-party plaintiff.  See, e.g., Roberts, 90 F.4th at 622, 628 (holding the prosecutor was not entitled to absolute immunity where the prosecutor coerced a jailhouse informant to provide false testimony against the plaintiff); Fogle, 957 F.3d at 164 (refusing to apply absolute immunity to the prosecutors' alleged solicitation of false statements from three incarcerated informants).

Even if the fact that White's statement came after White had been arrested (but not Plaintiff) is material, the Third Circuit recently held that a prosecutor could still engage in

14

investigatory conduct even post-arrest.  Roberts, 90 F.4th at 630.  The Second Amended Complaint sufficiently alleges that Defendant Desiderio was acting as an investigator trying to solve open homicides when he interviewed White and not as an advocate for the Commonwealth.

### 2.  Salaam's Statement

Defendant Desiderio, however, is entitled to absolute immunity for his conduct during judicial proceedings to obtain a second statement from Salaam.  Plaintiff alleges that Defendant Desiderio "began a campaign to use pretrial proceedings to put substantial pressure on Salaam to provide information that would lead to the arrest of Mr. Coulston."  SAC ¶ 77.  According to the Second Amended Complaint, Defendant Desiderio made statements in court highlighting the severity of the charges against Salaam and with the alleged intent of communicating to Salaam "that she would almost certainly be convicted as an adult of first degree murder and spend the rest of her life in prison" to allegedly coerce her into providing an updated statement.  Id. ¶¶ 78–80.

Such remarks made by Defendant Desiderio in court during Salaam's pretrial proceedings fall squarely within the ambit of the prosecutor's role as an advocate in the judicial process.  See Burns v. Reed, 500 U.S. 478, 486 (1991).  While the Second Amended Complaint alleges Defendant Desiderio was "intimately involved" in multiple interviews with White, SAC ¶ 65, it does not contain similar allegations regarding Salaam's statement.  Rather, the Second Amended Complaint alleges that on the same date Salaam's case was "decertified" and she was no longer facing a sentence of life imprisonment, Detective Harris conducted a second interview with Salaam "in collaboration with Desiderio and the other defendant detectives."  Id. at ¶ 84.  Detective Harris prepared a signed statement for Salaam, and Salaam signed the statement "and adopted the details Harris fed to her to eliminate inconsistencies with White's account of the Haynesworth murder." Id. ¶ 85.  The only allegations of Defendant Desiderio's involvement is that Defendant Desiderio

allegedly collaborated with Detective Harris and that "[Defendant] Desiderio was aware that Harris fed this information to Salaam to change her statement to align more closely with White's and knew that Salaam had agreed to adopt this fed information in order to ensure her transfer to juvenile court." Id. ¶ 86.

Thus, Defendant Desiderio's primary role with respect to obtaining the allegedly false statement from Salaam is Defendant Desiderio's allegedly coercive statements made in court, but those statements were made in connection with judicial proceedings for Salaam while Defendant Desiderio was acting as an advocate for the Commonwealth.

Based on these allegations, Defendant Desiderio is entitled to absolute immunity from Plaintiff's allegations involving Defendant Desiderio's conduct during Salaam's pretrial proceedings.

### 3. Plaintiff's Arrest Warrant and Conduct at Trial

To the extent Plaintiff alleges its claims are predicated on Defendant Desiderio's conduct in preparing the affidavit of probable cause or any alleged misconduct at trial, Defendant Desiderio is shielded by absolute immunity.  See Burns, 500 U.S. at 489–92; Weimer, 972 F.3d at 189–90.[5]

### B. Count V

This Court previously dismissed Count V with prejudice as to Defendant Desiderio.  ECF 39.  Plaintiff concedes that Count V was repleaded in error.  ECF 81-2 at 1 n.1.  The Court therefore **DISMISSES** Count V.

---

[5] Plaintiff's Response brief concedes that the allegations regarding how "Desiderio presented false testimony at trial and failed to disclose exculpatory evidence during the course of the prosecution" are "actions for which Desiderio is absolutely immune."  ECF 81-2 at 13.

## VI.    CONCLUSION

For the foregoing reasons, Defendant Desiderio's Motion to Dismiss is **GRANTED IN PART**.  Defendant Desiderio's Motion to Dismiss is **GRANTED with prejudice** as to the supplemental claim for malicious prosecution in violation of the laws of the Commonwealth of Pennsylvania (Count V) and is **DENIED** as to the claims for fabrication of evidence in violation of the Fourteenth Amendment (Count I), malicious prosecution in violation of the Fourth and/or Fourteenth Amendments (Count II), and deliberate suppression of exculpatory evidence in violation of the Fourteenth Amendment (Count III).

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 23\23-4077 Coulston v City\23cv4077 MTD Memo re Defendant Desiderio.docx